IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 17-51905-CAG |
| **GLAVESTON BAY PROPERTIES, LLC.** | § § § | |
| | § | **Chapter 11** |
| **Debtor** | § | |

## DEBTOR'S EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 105, 361, AND 364 AND FEDERAL BANKRUPTCY RULES 2002, 4001 AND 9004 FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTORS TO INCUR POST-PETITION SECURED INDEBTEDNESS

TO THE HONORABLE CRAIG A. GARGOTTA,
UNITED STATES BANKRUPTCY JUDGE:

Galveston Bay Properties, LLC ("GBP" or the "Debtor"), by and through its undersigned proposed counsel, hereby files this Emergency Motion for Interim Order and Final Orders Authorizing Debtor to Incur Post-Petition Secured Indebtedness (the "DIP Lending Motion"), and in support hereof, respectfully states as follows:

## I.
## SUMMARY OF PROPOSED TERMS OF THE DIP LOAN

1.  As set forth in greater detail in the Term Sheet (attached hereto as Exhibit "A"), the DIP Lenders (defined herein) have proposed the following terms for the DIP Loan (defined herein):

| | |
|---|---|
| Debtor/Borrower: | Galveston Bay Properties, LLC, the debtor in possession in the Chapter 11 case filed in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, Case No. 17-51905-CAG |
| DIP Lenders: | Grace Oil Investments, LLC & Galveston Bay Petroleum, LLC (the "DIP Lenders") |
| Total Amount: | $2,500,000.00 |
| Interim Amount: | Approximately $1,269,991 |

1

| | |
|---|---|
| <u>Interest</u>: | Advances under the DIP Loan will bear interest at a rate of 5.5% per annum |
| <u>Use of Proceeds</u>: | The initial tranche of the Facility will be in the approximate amount of $1,269,991, which shall be used by the Debtor pursuant to and in accordance with the Interim Budget, which Interim Budget is in accordance with the following general parameters: |

        (a) $245,000 is earmarked for payment of the Texas Railroad Commission's financial compliance requirement for the Debtor's operator.
        (b) Approximately $483,000 is necessary to pay specific critical vendor's pre-petition claims necessary to complete work to resume production on the Debtor's oil and gas properties. These amounts are subject to a separate Critical Vendor Motion being filed along with the DIP Lending Motion.
        (c) Approximately $58,000 is necessary to pay necessary insurance premiums.
        (d) Approximately $106,000 is necessary to fund current payroll obligations.
        (e) The balance of the initial tranche is necessary to production-related expenses.

The final tranche of the Facility will be in the approximate amount of $1,269,991 (with such amount not to exceed the total DIP Loan of $2,500,000.00 after subtracting the actual initial tranche), which shall be used by the Debtor pursuant to and in accordance with the Final Budget, which Final Budget shall generally include production-related expenses, insurance, payroll, and legal and professional fees and expenses (as and when approved by the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the United States Trustee guidelines and procedures).

<u>Events of Default</u>: In addition to ordinary and customary terms of default as will be set forth in the Final Facility Documents, the following shall be a default under the Facility:
    (a) the Debtor fails to comply with the Budget by (i) incurring expenses in any given week of over 10% percent of the weekly budgeted amount; or (ii) expending post-petition funds in a manner that is contrary to or inconsistent with the Budget, without the DIP Lenders' prior written approval;
    (b) the Bankruptcy Court has not finally approved the DIP Loan and the Final Facility Documents within 30 days after the Court enters an interim order approving a portion of the Facility;
    (c) the Debtor's bankruptcy case is dismissed or converted to chapter 7;
    (d) a trustee, receiver, interim receiver, receiver and manager, a

responsible officer or an examiner with enlarged powers shall be appointed in this case (having powers beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4));

(e) any other super-priority administrative expense claim or lien which is *pari passu* with or senior to the claims or liens of the DIP Lender under the Facilities shall be granted without the consent of the DIP Lender;

(f) the Bankruptcy Court shall enter an order granting relief from the automatic stay to any creditor or party in interest (i) to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of the Debtor which have an aggregate value in excess of $100,000 or (ii) to permit other actions that would have a material adverse effect on the Debtor or its estate;

(g) an order shall be entered reversing, amending, supplementing, staying for a period of five days or more, vacating or otherwise modifying any interim or final order regarding the Facility, or the Debtor or any of its affiliates shall apply for authority to do so, without the prior written consent of the DIP Lenders, or the interim or final DIP financing order with respect to the Facilities shall cease to be in full force and effect;

(h) any of the Final Facility Documents shall cease to be effective or shall be contested by the Debtor;

(i) the Debtor shall fail to comply with any order of the Bankruptcy Court governing this Facility;

(j) the filing of a motion, pleading or proceeding by the Debtor which could reasonably be expected to result in a material impairment of the rights or interests of the DIP Lenders or a determination by a court with respect to a motion, pleading or proceeding brought by another party which results in a material impairment;

(k) definitive documentation, in form and substance satisfactory to the DIP Lenders acting in good faith, shall not have been entered into within fourteen days after the date the Bankruptcy Court approves DIP Loan on an interim basis but prior to entry of a final order approving the DIP Loan, unless such date is extended by the DIP Lender acting in good faith; and

(l) such other usual and customary events of default that are reasonably requested by the DIP Lenders and approved by the Bankruptcy Court in any final, non-interim order.

Collateral/Priority: All obligations of the Debtors to the DIP Lenders, including, without limitation, all principal and accrued interest, costs, fees and expenses shall be:

(a) Entitled to the benefits of Bankruptcy Code § 364(c)(1), having priority over any and all administrative expenses of the kind specified in Bankruptcy Code §§ 503(b) and 507(b).

(b) Secured pursuant to Bankruptcy Code § 364(c)(2) by a perfected first-priority lien on, and security interest in, all of the Debtors'

| | |
|---|---|
| | assets. |
| Remedies: | Upon the occurrence of any Event of Default, the DIP Lenders may immediately terminate the DIP Loan, declare the obligations in respect of the DIP Loan to be immediately due and payable and exercise remedies. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters relating to the exercise of rights and remedies under the DIP Loan documentation, the DIP Order, and with respect to the Collateral. |
| Conditions Precedent: | The DIP Lenders' obligation to provide funding under the DIP Loan shall be subject to:<br>(a) With respect to the first tranche, entry of interim order by the Bankruptcy Court approving the DIP Loan, in a form reasonably satisfactory to DIP Lenders; and<br>(b) With respect to the final tranche, entry of a final order by the Bankruptcy Court approving the DIP Loan, in a form reasonably satisfactory to DIP Lenders, and execution by the Debtor of the Final Facility Documents. |
| Avoidance Actions: | For avoidance of any and all doubt, the DIP Lenders shall not be granted any liens on any chapter 5 causes of action or commercial tort claims, all D&O claims and claims against or covered by directors and officers insurance policies, if any, and any and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing exceptions to the DIP Collateral. |

# II.
# JURISDICTION

2. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

# III.
# BACKGROUND

3. On August 10, 2017 (the "Petition Date"), the Debtor filed its voluntary petition for relief under chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") commencing the above styled and numbered case in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Bankruptcy Court" and the "Bankruptcy Case"). Pursuant to Bankruptcy Code §§ 1107(a) and 1108, the Debtor is operating its business and managing its property as debtor in possession. No trustee or committee has been appointed in this matter.

4. The Debtor is a Texas limited liability company formed on September 22, 2016. The sole manager of the Debtor is Dan Polk. The members of the Debtor are Clow Partners and Polk Family Petroleum, LP. The Debtor's principal place of business is located at 2464 FM 725, New Braunfels, TX 78130. The Debtor holds majority working interests and owns leasehold interests in four oil and gas fields in the shallow waters of Galveston Bay, Texas, known as Fishers Reef, North Point Bolivar, Redfish Reef and Trinity Bay, and 127 well bores within those fields as well as related assets, including, but not limited to, gas and oil gathering lines, production lines, gas lift lines to aid in lifting the oil from the wells, various production platforms equipped with separators, storage facilities, pressure pumping and lifting equipment to produce these wells, and transport oil and gas to its onshore facilities which receive oil, dispose of water and also are

used to store equipment and offices, and living quarters for the crew. pipelines, machinery and production equipment appurtenant to or used in connection with these assets. The purchase also included a $6,600,000 cash bond posted at the Texas RRC ($60,000 per inactive well as per RRC regulations).

5. The Debtor purchased these assets from the jointly administered bankruptcy estate of Hydrocarb Energy Corporation ("Hydrocarb"), which is presently a debtor in a chapter 7 bankruptcy proceeding (Case No. 16-31922), pending before the Honorable Chief United States Bankruptcy Judge David Jones, in the Southern District of Texas, Houston Division. Rodney Tow is the chapter 7 Trustee in the *Hydrocarb* bankruptcy case. The Debtor paid the sum of $2,500,000 to the bankruptcy court, of which the majority was paid to Shadow Tree, agreed to pay a production payment of $500,000, and assumed a note in appromimate amount of $3,000,000 payable to Shadow Tree, and Quintium Private Opportunities Fund, LC with 4% interest, interest payments only required until June of 2018 when payment in full for the note assumed becomes due. The Debtor has made all interest payments on time.

6. The following entities have asserted or may asset liens on the Debtor's assets: Shadow Tree Capital Management LLC as agent for certain lenders, including Shadow Tree Funding Vehicle A- Hydrocarb LLC, Quintium Private Opportunities Fund, LP, and Samuel Gradess, as Trustee (collectively, "Shadow Tree"); Galveston County, Texas; Chambers County, Texas; Archrock Partners Operating, LLC; and the Texas General Land Office, which is the lessor for the leases of the Debtors in the above referenced fields. The Debtor believes its assets are worth in excess of $28,000,000.00. Estimated non-insider debts of the Debtor are in the approximate amount of $4,100,000.00.

7. Since acquiring the assets in the Hydrocarb bankruptcy case, the Debtor has

provided additional capital of over $3,500,000 that has been used to generate a complete study of the geology and mechanical condition of the wells and has restored wells to the level of prior production and restored the infrastructure which is used to produce these wells increasing production from a non-viable 45 bbls of oil per day in December of 2016 when the Debtor first took to the field to a over 350 bbls of oil per day in April, generating approximately $350,000 net per month of revenues which would go back into the operational expenses of the development plan of the project each month, and had used its Development Plan to reach a highly viable state in March and April of 2017. The Debtor has also produced and rolled into the the operations for further development of the field all of its working interest revenues of nearly $1,000,000. However, the Debtor has faced challenges in effecting production from its wells. First, the Debtor has faced challenges in having its affiliate and operator of choice, Galveston Bay Operating LLC ("Operating"), qualified and approved by the Texas Railroad Commission. An agreement was reached in April of 2017 between Galveston Bay Operating, LLC, the Debtor, Dan Polk, Progas Properties, Inc., and the Texas Railroad Commission that would allow Operating to qualify and serve as operator. The key remaining item necessary to be completed pursuant to that agreement is the placement of a $240,000 cash bond to ensure performance of certain regulatory obligations. The Debtor currently lacks access to these funds. Second, a lightning strike occurred on 12 May of 2017 at Point Barrow, the onshore shipping facility for oil and gas produced in the Trinity Bay and Fishers Reef Fields shut down production operations for these two fields and reduced production from 300 plus bopd with its $300,000 net income to less than 20 bopd and less than $25,000 per month in income.As a result of these two primary obstacles, the Debtor faces immediate liquidity issues.

8. Additionally, Shadow Tree has taken the position that, as a result of alleged non-

7

production, the Debtor's interest in its oil and gas leases would begin expiring in mid-August 2017. Shadow Tree filed a lawsuit in Montgomery County, Texas seeking injunctive relief against the Debtor, Operating, and others. This Bankruptcy Case was filed to allow the Debtor breathing room to reorganize and restructure its debt and arrange for funding of all or part of the capital required to pay its debts off and continue operation and development of the Project. The Debtor has an immediate need for an influx of operating capital. This DIP Lending Motion is filed to address that need. The proposed DIP Lenders are not insiders of the Debtors.

## IV.
## RELIEF REQUESTED

9. By this Motion, the Debtor seeks the Bankruptcy Court's authorization under sections 364(b) and (d) of the Bankruptcy Code to obtain debtor-in-possession funding (the "DIP Loan") from Grace Oil Investments, LLC ("Grace") and Galveston Bay Petroleum, LLC ("Petroleum").[1] Specifically, the Debtor requests that this Court approve the DIP Loan under the proposed terms and conditions set forth in the Term Sheet attached hereto as Exhibit "A," or such terms and conditions approved by the Bankruptcy Court after consideration of this Motion. The final terms of the DIP Loan shall be memorialized in the "Final Facility Documents," which will include a loan agreement, a note or notes, a security agreement and deeds of trust, and related instruments necessary to fully document the DIP Loan. Other, longer range provisions in the Term Sheet will be included in the Debtor's plan of reorganization to be filed according to the schedule set forth herein. This DIP Lending Motion to not, in any way, seek authorization or approval at this time of the restructuring provisions contained in the Term Sheet.

---

[1] The Final Facility Documents will consist of separate loan documents executed in favor of Grace and Petroleum. The term DIP Loan consists of a loan from Grace and a loan from Petroleum. The two loans will be identical in amount and priority.

8

10. The Debtor seeks entry of a final order (the "DIP Order") authorizing borrowing in the total aggregate amount of up to $2,500,000.00 from the DIP Lenders. Of this amount, initial interim financing in the first fourteen (14) day period is requested in the approximate amount $1,269,991. The funds to be extended under the DIP Order will provide the Debtor with operating capital to allow it to fund necessary Texas Railroad Commission financial requirements for the Debtor's operator, to make fund payroll obligations for the Debtor and the Debtor's operator, to pay critical vendors identified in a separate Critical Vendor Motion, and to fund ongoing operations to return the Debtor's offshore assets to production.

11. The Debtor has, in its best business judgment, determined that the DIP Loan is vital and necessary to the Debtor's ability to hold its existing leases and allow the Debtor to operate in chapter 11 with the ultimate goal of a successful reorganization. Without access to the DIP Loan, the Debtor will not have funds to finance its operations and continue as a going concern. Because of the status of current (non-)operations, the Debtor is not generating revenue to fund necessary expenses and operations and will not for at least 30 days after funding of the Loan. Consequently, the Debtor's continued viability and ability to reorganize while maintaining operations depends heavily upon the approval of the DIP Loan.

12. The Debtor submits that the terms of the DIP Loan are fair and reasonable under the circumstances. The DIP Lenders are offering the DIP Loan with the view that this financing will provide necessary working capital to allow the Debtors to immediately fund Texas Railroad Commission obligations, fund existing payroll obligations, maintain the leases, and return offshore assets to production, thereby maximizing the value of the Debtor's estate for all stakeholders. The total DIP Loan is anticipated to provide necessary capital to fund operations through confirmation of a plan of reorganization. The Debtor intends to move very quickly to plan confirmation. A

plan and disclosure statement will be filed no later than August 28, 2017. The Debtor will seek to arrive at a plan confirmation hearing no later than November 3, 2017, or earlier if possible.

13. The Debtor requests that this Court approve access to the DIP Loan on an *interim* basis pursuant to the attached fourteen (14) day budget (attached hereto as Exhibit "B"), and on a *final* basis according to a final budget to be presented prior to the final hearing designed to cover operations to confirmation of a plan of reorganization.

## V.
## AUTHORITY FOR RELIEF REQUESTED

14. Subsections (c) and (d) of the Bankruptcy Code section 364 provide:

(c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt –
(1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

(2) secured with a lien on property of the estate that is not otherwise subject to a lien; or

(3) secured by a junior lien on property of the estate that is subject to a lien.

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the [Debtor] is unable to obtain such credit otherwise; and
(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

(2) In any hearing under this subsection, the [Debtor] has the burden of proof on the issue of adequate protection.

15. Bankruptcy Rule 4001(c) governs the procedures for obtaining authorization for post-petition financing and, in summary fashion, provides:

(c) Obtaining Credit

(1) Motion; Service. A motion for authority to obtain credit shall be made in

accordance with Rule 9014 and shall be served on any committee elected pursuant to § 705 or appointed pursuant to § 1102 of the Code or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed pursuant to § 1102, on the creditors included on the list filed pursuant to Rule 1007(d), and on such other entities as the court may direct. The motion shall be accompanied by a copy of the agreement.

(2) <u>Hearing</u>. The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

(3) <u>Notice</u>. Notice of hearing pursuant to this subdivision shall be given to the parties on whom service of the motion is required by paragraph (1) of this subdivision and to such other entities as the court may direct.

16. Here, the Debtor-in-Possesion has inadequate existing revenue to operate its business and to preserve the bankruptcy estate. The Debtor-in-Possession is unable to obtain unsecured credit allowable under section 503(b)(1). The Debtor has negotiated with the DIP Lenders regarding the terms of the DIP Loan and the DIP Lenders have requested senior secured liens on all assets of the Debtor. The Debtor-in-Possession is unable to obtain such credit otherwise. Based upon the value of the collateral at issue, the Debtor-in-Possession anticipates meeting its burden of proof at the hearing on this motion with respect to adequate protection for any pre-petition secured creditors.

## VI.
## **INTERIM HEARING AND FINAL HEARINGS**

17. An immediate need exists for the Debtor to incur post-petition debt in order to (i) restart the Debtors' oil and gas operations, and (ii) to pay ongoing expenses in the ordinary course of business.

18. Without the immediate approval of the DIP Loan for the interim period, the Debtor will be unable to restart its operations, which will lead to the continued decline in the value of the Debtor's estate. Obviously, this would have a severe negative impact upon the Debtor's going

concern value and ability to successfully create value for all creditors. The Debtor's business as a going concern has a value far in excess of any value that could be obtained in a chapter 7 liquidation. Accordingly, the Debtor has requested an expedited hearing (the "Interim Hearing") on the interim approval of the DIP Loan.

19. Pursuant to Bankruptcy Rule 4001, the Debtor requests that this Court authorize the interim borrowings set forth above under the proposed DIP Loan in order to avoid immediate and irreparable harm to the bankruptcy estate pending a Final Hearing. The Debtor further requests immediate entry of the Interim Order pursuant to Bankruptcy Rule 4001(b)(2), (c)(2) and BLR 4001. The request to enter into the DIP Loan on an expedited basis is necessary to avoid immediate and irreparable harm to the Debtor and the bankruptcy estate.

20. The Debtor further requests that this Court schedule the Final Hearing as soon as this Court's schedule permits, following 14 days after service of this Motion.

## VII.
## PRAYER

WHEREFORE, Debtor respectfully requests that this Court (i) authorize entry of the order submitted herewith authorizing the Debtor to borrow the funds necessary as set forth herein pursuant the Interim Budget and the Final Budget; (ii) authorize the Debtor to execute and deliver the Final Facility Documents and perform such other and further acts as may be necessary in connection therewith; (iii) set a final hearing as soon as this Court's schedule permits, following 14 days after service of this Motion for approval and entry of a final order; and (iv) grant the Debtor such other and further relief as this Court may deem just and proper.

Respectfully submitted on this 14th day of August, 2017.

                    Respectfully submitted,

                    Kell C. Mercer, PC
                    1602 E. Cesar Chavez Street
                    Austin, Texas 78702
                    (512) 627-3512
                    kell.mercer@mercer-law-pc.com

                By:*/s/ Kell C. Mercer*
                      Kell C. Mercer
                      Texas Bar. No. 24007668

                    **PROPOSED ATTORNEY FOR DEBTOR**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the forgoing Motion was served upon all parties on the attached service list pursuant to the Federal and Local Bankruptcy Rules on the 14th day of August, 2017.

                    */s/ Kell C. Mercer*
                    Kell C. Mercer